### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MICHAEL T. McRAITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      No. 06 C 4799 |
| | ) |
| BURNS & WILCOX, LTD., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

Before the court are the parties' cross-motions for summary judgment and plaintiff's motion for sanctions.  For the reasons explained below we grant plaintiff's summary judgment motion, and deny the defendant's.  Plaintiff's motion for sanctions is granted in part and denied in part.

### BACKGROUND

Plaintiff Michael T. McRaith, the director of the Illinois Department of Insurance, is the court-appointed liquidator of Legion Indemnity Company ("Legion").[1]  (Pl.'s L.R. 56.1 Stmt. (hereinafter "Pl.'s Stmt.") ¶ 1.)  The defendant Burns & Wilcox, Ltd. ("BW") is a Michigan corporation licensed to do business in Illinois as an insurance agent.  (Id. at ¶ 2.) Legion and BW entered into a Management Agreement on June 23, 1997 whereby BW

---

[1]  We will follow the parties' lead and refer to the plaintiff as Legion, rather than McRaith.

agreed to act as an agent for Legion to underwrite insurance and collect premiums for Legion's insurance products. (Id. at ¶ 6; see also Mgmt. Agmt., attached as Ex. 5 to Pl.'s Stmt.)  The agreement specified that BW (the "Manager") held the premiums "in a fiduciary capacity" and agreed to remit them to Legion (the "Company") on a quarterly basis:

> Accounts of money due the Company on the business written by the Manager with the Company shall be made, and the balance therein shown to be due shall be paid, not later than forty-five (45) days after the close of the quarter in which the premium is written.
>
> [. . .]
>
> All premiums collected by the Manager are to be held in a fiduciary capacity for the Company in an account in a bank which is a member of the Federal Reserve System, and are the property of the Company.  The burden of collection of such premium shall be borne by the Manager, whether collected or not.  The Manager has no interest in the premiums collected by it and shall make no deductions therefrom before paying the same to the Company except for the compensation authorized in Section Nineteen.  The Manager shall not make personal use of such premium funds either in paying expenses of the Manager or otherwise.

(Mgmt. Agmt. § 11(A) & (C).)  BW, in turn, received "compensation" based on a percentage of gross premiums.  (Id. at § 19.)  It was also entitled to receive a "contingent profit commission" equal to 25% of "Net Earned Profit," as defined in the agreement.  (Id. at § 21.)  Legion's obligation to pay BW the contingent commission was itself contingent upon Legion receiving those funds from its

reinsurers.[2]     (Id.)     The agreement authorizes either party to

"offset" against BW's "compensation" any claims "arising out of"

the agreement.    (Id. at § 22.)    The parties conducted business

pursuant to the agreement, apparently without incident, for a

period of approximately five years before Legion's financial

difficulties came to light.

On April 3, 2002 the Circuit Court of Cook County entered an

Order of Conservation, turning over control of Legion to the

Illinois Director of Insurance.    (Pl.'s Stmt. ¶ 9; Order of

Conservation, attached as Ex. 6 to Pl.'s Stmt., at 2-3.)    The Order

of Conservation directed Legion's insurance agents and brokers to

"immediately" turn over any insurance premiums owed to Legion "in

gross and not net of any commissions which may be due thereon,

subject to the provisions of 215 ILCS 5/206 [governing set-off] .

. . ."   (Order of Conservation ¶ G.)   It is now undisputed that BW

owes Legion $631,936.87 for premiums collected during the two

financial quarters immediately preceding the Circuit Court's order.

(Id. at ¶¶ 16-27.)   It is unclear why BW did not turn over those

funds to Legion in 2002 — it does not argue, for example, that it

---

[2]   There is scant evidence in the record concerning Legion's arrangement
with its reinsurers.  BW contends that three reinsurers accepted 100% of the risk
on the Legion policies sold by BW.  But BW does not cite any evidence supporting
this assertion, (see Def.'s L.R. Stmt. ¶ 3), nor does it supply any detail
concerning the reinsurers' obligations (if any) to pay Legion a contingent
commission.

did not receive notice of the Circuit Court's order.[3] Be that as it may, Legion received notice of an Order of Liquidation entered by the Circuit Court approximately one year later. That order contained substantially the same terms regarding turnover as the Order of Conservation. (Pl.'s Stmt. ¶ 10; see also Order of Liquidation, attached as Ex. 7 to Pl.'s Mem., ¶ J(v).) It appears that BW ignored this order as well. Without disclosing the premiums that it was holding on Legion's behalf BW filed a proof of claim in Legion's liquidation proceeding seeking $187,593.10 for paid insurance claims. (Pl.'s Stmt. ¶ 34; see also Proof of Claim, dated October 8, 2004, attached as Ex. 12 to Pl.'s Stmt.)

In 2006 Legion filed this lawsuit in state court, and BW removed it to this court on the basis of diversity jurisdiction. In response to Legion's complaint, BW filed a counterclaim seeking the same reimbursement that it had previously sought in the liquidation proceeding. After conferring with the counsel overseeing Legion's liquidation BW conceded that the counterclaim was inappropriate and we dismissed it by agreement of the parties. At the same time we gave BW leave to amend its answer to assert its

---

[3] When asked by plaintiff's counsel why BW stopped remitting premiums to Legion, BW's chief underwriting officer testified that it was "fairly common practice" in the insurance industry to withhold premiums "when a carrier is experiencing difficulties." (Dep. of David Price, attached as Ex. 3 to Pl.'s Stmt., at 30.)

claim as an affirmative defense (i.e., set off).[4]  To that point,
BW had not requested any relief concerning contingent commissions
— as distinct from its claim for paid insurance claims — either in
this court or in the liquidation proceeding.

Then, during settlement discussions in or about December 2008,
BW claimed for the first time that it was entitled to contingent
commissions totaling $817,760.  (Pl.'s Stmt. ¶¶ 29-33; see also
Summary of Settlement Position, attached as Ex. 11 to Pl.'s Stmt.)
It revised that figure on the eve of the deposition of its chief
underwriting officer, more than doubling it to $1,737,719.  (Pl.'s
Stmt. ¶ 40; see also Revised Contingent Profit Calculation,
attached as Ex. 15 to Pl.'s Stmt.)  Without any explanation, BW
reverts to the $817,760 figure in its response to Legion's motion
for summary judgment.  (Def.'s Stmt. ¶ 5.)  Given that BW admits
that it owes Legion $631,936.87 in unpaid premiums, the only
remaining question is whether BW is entitled to set-off against
that amount the money that it claims it is owed for contingent
commissions.

## DISCUSSION

### A.   Legal Standard

Summary judgment "should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits show

---

[4]  BW did not amend its answer.  Nevertheless, the parties appear to agree
that BW preserved its defense in its original answer, which pled set-off without
specifying the basis for that defense.

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

BW will bear the burden of proving at trial that it is entitled to set off. See, e.g., James River Ins. Co. v. Kemper Cas. Ins. Co., 585 F.3d 382, 385 (7th Cir. 2009) ("It is sensible to place the burden of proof of an affirmative defense on the defendant, rather than making the plaintiff prove a negative."). With respect to its motion for summary judgment, Legion "carries the initial burden of production to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001) (citation and internal quotation marks omitted). It may satisfy this burden "'showing' — that is, pointing out to the district court — that

there is an absence of evidence to support [BW's] case."  Id.

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"Once the moving party satisfies this burden, the nonmovant must

'set forth specific facts showing that there is a genuine issue for

trial.'" Id. (quoting Fed.R.Civ.P. 56(e)).

## B.  BW Has Failed to Meet its Burden with Respect to Its Own Motion for Summary Judgment and in Response to the Plaintiff's Motion

The majority of BW's response to plaintiff's motion to dismiss

is devoted to the question whether its affirmative defense

satisfies the legal requirements for set-off under Illinois law.

See 215 ILCS 5/206 ("In all cases of mutual debts or mutual credits

between the company and another person, such credits and debts

shall be set off or counterclaimed and the balance only shall be

allowed or paid . . . .").  But there is no need to reach that

question unless we conclude that BW is entitled — or at least that

there is a genuine dispute of fact as to whether it is entitled —

to the monies that it seeks to set-off against its admitted

obligation to pay premiums to Legion.  Under the Management

Agreement BW's right to a contingent commission is subject to

Legion receiving "such contingent commission" from its reinsurers.

(Mgmt. Agmt. § 21.)  BW does not cite any evidence showing that

this condition is satisfied.[5]  In lieu of evidence BW "presumes"

_____

[5]  Legion, although not required to do so, has submitted evidence that this condition is *not* satisfied.  (See Decl. of Michael Cosentino, attached as Ex. 1 to Pl.'s Supp. to its Stmt., ¶ 3.)  Although Legion filed Mr. Cosentino's declaration with its reply memorandum, BW did have an opportunity to respond in

that Legion has received (or will receive) commissions, and summarily concludes (without citing any relevant authority) that Legion holds that money as BW's fiduciary. (Def.'s Resp. at 4.) Its claim for contingent commissions is neither "absolutely owing but not presently due," nor "accrued but [] as yet unliquidated." See Stamp v. Ins. Co. of N. America, 908 F.2d 1375, 1380 (7th Cir. 1990) (citation and internal quotation marks omitted). It is hypothetical. So, not only is BW not entitled to summary judgment, it has failed to meet its burden to "set forth specific facts" in response to plaintiff's motion. The parties were given over a year to conduct discovery, not including the extended period of time during which this case sat dormant on our docket. This was ample time for BW to develop evidence supporting its affirmative defenses, to say nothing of the six years during which it ignored the Circuit Court's initial order to turn over funds without asserting any right of set off. Yet BW did not depose any representative of Legion or its reinsurers, (see Pl.'s Resp. to Def.'s Cross-Mot. for Summ. J. at 2), or request any discovery relevant to determining whether a necessary condition of its affirmative defense was satisfied. (See BW's Interrogs. to Pl. & Request for Production, attached as Ex. B to Def.'s Resp. to Pl.'s

---

its later-filed cross-motion for summary judgment. It did not, and given its failure to conduct relevant discovery in this case — see *infra* — the most that it could have mustered in response is an unsubstantiated denial. See Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004) ("The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal.").

Sanctions Mot.)  Its "presumption" that it is entitled to contingent commissions is insufficient to defeat plaintiff's motion for summary judgment.

## C.  Plaintiff's Motion for Sanctions

This case has taken a very long time to reach this conclusion. After BW removed the case from the Circuit Court attorneys for both parties filed appearances, then did nothing for over a year.  Five months after BW filed its belated answer the parties still had not advanced the case, and at that time we expressed our frustration with *both* parties.  (See Trans. of Proceedings dated June 18, 2008, attached as Ex. D to Pl.'s Supp. Mem. in Support of Request for Sanctions (hereinafter, "Sanctions Mem."), at 6.)  We gave BW until July 18, 2008 to make its already tardy Rule 26 disclosures, and directed the parties to complete discovery on or before October 31, 2008.  Another two months elapsed after BW's Rule 26 disclosures before Legion served its discovery requests; BW did not request any discovery at all.  BW's responses to plaintiff's discovery were due approximately two weeks prior to the close of discovery, with proposed deposition dates for the following week.  As of October 27, 2008 BW still had not responded to plaintiff's discovery requests and no depositions had been taken or scheduled.  This prompted Legion to file a motion to compel and to extend the discovery cutoff (as to Legion only) an additional two weeks. (Between Legion's filing and the hearing on its motion BW did provide some responsive documents.)  We extended the discovery cut-

off as to *both* parties to December 31, 2008. On December 15, 2008 the parties jointly moved to extend the date again in light of their settlement discussions. As of that date, with only two weeks remaining before the discovery cutoff, it appears that neither party had taken any depositions. (Mot. for Agreed Order Extending Discovery Cutoff ¶ 3.) Nevertheless, we granted the motion and extended the discovery cutoff to February 28, 2009.

It was during those settlement discussions that BW asserted for the first time that it was entitled to a contingent fee commission. The parties' negotiations collapsed shortly thereafter, and depositions were again scheduled for the week prior to the close of discovery. Late on Friday, February 20, 2009, BW's counsel informed Legion's counsel that the witnesses scheduled to be deposed the following Monday were no longer available on that date. (See Decl. of John Anderson, attached as Ex. 2 to Pl.'s Second Motion to Compel, ¶ 4.) BW proposed February 27, 2009 — one day before the discovery cut-off — as the new date to depose its 30(b)(6) witnesses, while offering no new dates for the other witnesses Legion was scheduled to depose that week. (Id.) Moreover, BW still had not responded to interrogatories that Legion had issued in September 2008. This prompted Legion to file a second motion to compel on February 25, 2009. Between the filing of that motion and the hearing on March 11, 2009 Legion did take the two 30(b)(6) depositions. On the evening before those depositions were to take place BW produced a number of documents,

including answers to Legion's interrogatories. As for the depositions themselves, Legion contends that the deponents lacked "meaningful knowledge" concerning the claimed commissions. At the hearing on Legion's second motion to compel we characterized BW's interrogatory responses as "not adequate" and "almost insulting." We granted plaintiff's motion while taking its request for sanctions under advisement. We directed BW to supplement its interrogatory responses and to produce all requested documents, and we extended the discovery cut-off to April, 10 2009 for Legion to conduct additional discovery on the contingent fee issue. (See Order, dated March 11, 2009, at 1.) Pursuant to our order Legion scheduled the deposition of David Price, the person belatedly identified by BW as most knowledgeable about the contingent commission claim. Late on the Friday preceding Mr. Price's Monday deposition BW submitted additional documents containing a substantially different contingent-fee calculation. At his deposition Mr. Price testified concerning the figures that were used to make the revised contingent fee calculation, (see, e.g., Price Dep. at 36-45, 62-71, 80-84), but otherwise he could not shed much light on the issue. He had not personally performed the calculation, (id. at 82-83), and the contingent-fee issue had been brought to his attention only one week before his deposition. (See id. at 18-21, 28, 31-32.)

Legion asks us to strike BW's setoff defense and enter judgment in its favor, relief that is now moot in light of our

decision on the parties' cross-motions for summary judgment.  It also requests "attorneys' fees and costs incurred in connection with seeking adequate discovery responses."  (Sanctions Mem. at 11.)  Throughout this litigation BW's responses have been tardy, inadequate, or both.  Likewise, its conduct with respect to the depositions — rescheduling at the last minute and dumping documents on opposing counsel on the eve of deposition — seriously inconvenienced the plaintiff.  As for the depositions themselves, none of the three designated 30(b)(6) witnesses was able to supply much information about BW's contingent-fee claim.  Our impression, based on the confusing and sometimes contradictory testimony of BW's corporate witnesses, is that no one at the company had given the issue much thought until it was flagged by its attorneys more than two years into this litigation.  On the other hand, BW's claim arises out of a provision of the parties' written contract and neither party has argued that the provision is ambiguous.  Accordingly, what Legion needed from BW was information that would enable Legion's attorneys and advisors to test the accuracy of BW's calculation, using the formula set forth in the parties' contract.  It appears that BW did provide some relevant information concerning that issue — albeit at the last minute — and that Mr. Price was prepared to testify about it.  But as we previously discussed BW has abandoned the revised calculation that Mr. Price testified about.  It is unclear, then, whether his deposition served any purpose except further expense and confusion.

While Legion shares some of the blame for the delays in this case, that does not excuse BW's conduct.  Legion's counsel's good faith attempts to obtain discovery without our intervention are well documented, BW has not cited any substantial justification for its conduct, and no other circumstances indicate that it would be unjust to require BW to pay Legion's reasonable expenses (including attorneys' fees) in making the motions to compel that we granted on October 29, 2008 and March 11, 2009, respectively.  See Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).  In addition, we will require BW to compensate Legion for the reasonable expenses (including attorneys' fees) associated with Legion's counsel's second trip to Michigan to depose Mr. Price.

## CONCLUSION

Defendant's cross-motion for summary judgment (79) is denied. Plaintiff's motion for summary judgment (54) is granted. Plaintiff's motion for sanctions (33) is granted in part and denied in part.  BW is ordered to pay Legions's reasonable expenses (including attorneys' fees) incurred in making the motions to compel that we granted on October 29, 2009 and March 11, 2009, respectively.  BW is further ordered to pay Legion for the expenses (including attorneys' fees) associated with Legion's counsel's second trip to Michigan to depose Mr. Price.  The parties are directed to confer pursuant to Local Rule 54.3 in a good-faith effort to reach a pre-motion agreement on the amount of fees and related nontaxable expenses that should be awarded to plaintiff,

prior to the filing of any fee motion.  This is without prejudice to defendant's position that no fees or expenses should be awarded. If the parties are unable to agree upon an appropriate amount of fees and expenses by March 31, 2010, then, by April 21, 2010, they shall file the joint statement required by subdivision (e) of the Rule and the fee motion required by subdivision (f).  Should further direction from the court be needed, it can be requested by the motion for instructions described in subdivision (g).


DATE:     March 11, 2010


ENTER:    _____

          John F. Grady, United States District Judge